# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-11084

————

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KEVIN RAY PRENTICE,

Defendant – Appellant

*************************************

Consolidated with 18-11273

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

KEVIN RAY PRENTICE,

Defendant - Appellee

————

Appeals from the United States District Court
for the Northern District of Texas

————

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2020

Lyle W. Cayce
Clerk

No. 18-11084 c/w
No. 18-11273

Before HIGGINBOTHAM, JONES, and DUNCAN, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Kevin Ray Prentice and the government both assert error in Prentice's sentence for possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). The government faults Prentice's present term of imprisonment as less than one-third of what the law requires because, the government contends, Prentice has "three previous convictions . . . for a violent felony or a serious drug offense" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) (2018). Prentice argues to the contrary and also contests, for the first time on appeal, the constitutionality and reasonableness of one of the conditions of his supervised release. We hold that, in the wake of *Shular v. United States*, 140 S. Ct. 779 (2020), the ACCA applies, that Prentice's prison sentence must accordingly be enhanced, and that Prentice has not shown plain error regarding his supervised release. We VACATE and REMAND for reinstatement of Prentice's original sentence.

## BACKGROUND

At a gun show in June 2016, Fort Worth police officers noticed apparent prison tattoos on Prentice's forearms and observed him parting ways from his girlfriend as she went to buy two firearms. Afterward, she reconvened with Prentice and gave him a box with one of the purchases, a semi-automatic rifle. Prentice was incredulous at how much his girlfriend had spent but proceeded to purchase some ammunition and a light/laser himself. Prentice and his girlfriend then left the gun show, and soon thereafter, the police pulled them over in Prentice's car. The officers discovered the rifle and arrested him for possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Prentice subsequently pled guilty without a plea agreement.

No. 18-11084 c/w
No. 18-11273

Previously, Prentice had been convicted of six crimes, including two convictions for burglary of a habitation and one conviction for possession of a controlled substance with intent to deliver. Based on these latter three convictions, Prentice's presentence report applied the ACCA, which states:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1).

Over Prentice's objection that his burglary convictions were not "violent felon[ies]," the court adopted the presentence report, noted a Sentencing Guidelines range of 180 to 188 months' imprisonment, and sentenced Prentice to 188 months. The court also imposed four years of supervised release under the standard conditions. Among the standard conditions is a visitation condition:

> The defendant shall permit a probation officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the U.S. Probation Officer.

Prentice appealed. He argued that the district court erred in treating his two Texas habitation-burglary offenses as "violent felon[ies]" and in treating his Texas possession-with-intent offense as "a serious drug offense," although he acknowledged that Fifth Circuit precedent foreclosed the latter challenge.[1] In light of *United States v. Herrold* (*Herrold I*), 883 F.3d 517 (5th Cir. 2018) (en banc), this court agreed that a burglary offense under Texas law was not a "violent felony" under the ACCA. *United States v. Prentice*, 721 F.

---

[1] Prentice did not object to the visitation condition at this time.

3

No. 18-11084 c/w
No. 18-11273

App'x 393, 393–94 (5th Cir. 2018).  Citing *United States v. Vickers*, 540 F.3d 356 (5th Cir. 2008), the panel deemed Prentice's possession-with-intent offense to be "a serious drug offense," but because Prentice lacked three relevant convictions, it remanded for resentencing.  *See id.*

On remand, Prentice's new guideline range was 30 to 37 months' imprisonment, but the district court imposed 55 months.  The district court also reimposed the standard conditions of supervised release both orally and in its written judgment.  As Prentice concedes, he did not object to the visitation condition at this point, but he timely appealed, contending that the district court plainly erred in imposing the visitation condition.

Subsequently, the government also appealed, noting a pending petition for a writ of certiorari in *Herrold I*.[2]  Since the filing of that appeal, the Supreme Court has vacated *Herrold I* in *United States v. Herrold,* 139 S. Ct. 271 (2019), and on remand this court held that Texas habitation-burglary convictions qualify as convictions for a "violent felony" under the ACCA. *United States v. Herrold* (*Herrold II*), 941 F.3d 173, 182 (5th Cir. 2019).  On this ground, the government asserted in its initial appellate brief in this case that Prentice has three convictions under the ACCA and should be resentenced accordingly.

In between the filing of the government's and Prentice's briefs, the Supreme Court handed down another relevant decision.  In *Shular v. United States*, the Court interpreted "serious drug offense" under the ACCA, which defines that term to mean:

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled

---

[2] The government had objected at sentencing to non-application of the ACCA.

No. 18-11084 c/w
No. 18-11273

substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii).

Prentice now contends that *Shular* implicitly establishes that his possession-with-intent offense under Texas law is not a "serious drug offense" under the ACCA. On this alternative ground, he argues, his shortened prison sentence should be affirmed.[3]

## STANDARD OF REVIEW

This court reviews whether a prior conviction qualifies as an ACCA predicate de novo. *See United States v. Massey*, 858 F.3d 380, 382 (5th Cir. 2017). We consider previously unraised challenges to conditions of supervised release under plain-error review. *United States v. Ellis*, 720 F.3d 220, 225 (5th Cir. 2013).

## DISCUSSION

We consider first the implications of *Herrold II* and *Shular*, then Prentice's challenge to the condition of supervised release. The government's position prevails.

### I.

Under *Herrold II*, it is settled that Prentice's convictions for burglary of a habitation under Texas law are "convictions . . . for a violent felony" under the ACCA. 941 F.3d at 182. However, Prentice reiterates his contention that his conviction for possession with intent to deliver under Texas law is not a "conviction[] . . . for . . . a serious drug offense" under the ACCA, a result that

---

[3] Prentice has also moved to stay this court's decision until the Supreme Court decides whether to review *Herrold II*. In the circumstances of this case, a pending petition for a writ of certiorari is not an adequate reason to delay deciding a legal question, considering that otherwise, Prentice is subject to immediate, albeit erroneous, release from prison.

would undercut the applicability of the ACCA enhancement and preserve his current prison sentence.

Prentice acknowledges that his argument would fail under *Vickers*, which upheld an ACCA enhancement for a "serious drug offense" because, under Texas law, "possess[ing] with intent to deliver a controlled substance" includes possessing with intent to offer to sell a controlled substance. 540 F.3d at 363–64 (quoting Tex. Health & Safety Code Ann. §§ 481.112, 481.002(8) (2003)). Although the panel noted that an offer to sell could not be considered "distribution" or "dispensing" under the Sentencing Guidelines, *id.* at 364 (citing *United States v. Gonzales,* 484 F.3d 712, 716 (5th Cir. 2007)), the panel focused on the language of ACCA, which prescribes the enhancement for prior convictions "involving" the distribution of controlled substances. Critically, the panel interpreted "involving" to plainly mean "related to or connected with." *Id.* at 365 (quoting *United States v. Winbush,* 407 F.3d 707 (5th Cir. 2005). On the ground that possessing a drug with intent to offer to sell is related to the distribution of drugs, the *Vickers* court held that "possess[ing] with intent to deliver a controlled substance" under Texas law is "an offense under State law, involving . . . possessing with intent to . . . distribute, a controlled substance" under the ACCA. *Id.* at 365–66.

*Vickers* thus concluded that a Texas possession-with-intent conviction is a "serious drug offense," and if *Vickers* remains good law, Prentice was convicted for a "serious drug offense."[4] According to Prentice, though, *Vickers* was overruled by the Supreme Court in *Shular*. We disagree. *Shular* altered the rationale underlying *Vickers,* but not its result.

---

[4] The Texas statute considered in *Vickers* was also in force at the time of Prentice's conviction for possession with intent to deliver.

No. 18-11084 c/w
No. 18-11273

At issue in *Shular* was whether selling a controlled substance under Florida law is "a serious drug offense" under the ACCA. *See* 140 S. Ct. at 784. The Court had to determine whether the Florida offense was one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." *See id.* The *Shular* Court seemed to define "involving" in terms of the parties' agreement that the word means "necessarily requir[ing]." *See id.* at 785; *see also id.* at 784. Nevertheless, holding that the ACCA refers, not to a generic offense, but to "the *conduct* of 'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance,'" *id.* at 787, the *Shular* court affirmed the defendant's enhancement. *Id.*

Prentice's argument that *Shular* overruled *Vickers* focuses on *Shular*'s apparent definition of "involving" as "necessarily requiring." That definition, Prentice notes, is different from the definition in *Vickers*: "related to or connected with." Prentice reasons that, after *Shular*, only an offense that necessarily requires "possessing with intent to . . . distribute" may be "a serious drug offense" under the ACCA. Thus, Prentice reads *Shular* to establish that the Texas possession-with-intent offense is not "a serious drug offense."

This is a misreading. We may assume that *Shular* defined "involving" in the ACCA to mean "necessarily requiring." Nevertheless, its central holding was that this provision of ACCA is interpreted categorically not according to the generic definition of specific crimes identified by Congress,[5] but according to whether the elements of the state law offense involve the generic *conduct* specified in the federal statute. *Id.* at 782 ("The 'serious drug offense' definition requires only that the state offense involve the conduct specified in the federal

---

[5] *Cf. Mathis v. United States*, 136 S. Ct. 2243, 2247–49 (2016).

7

statute; it does not require that the state offense match certain generic offenses."). The Court elaborates on this understanding by citing *Kawashima v. Holder,* which held that an immigration provision depended on *conduct involving* fraud or deceit even though a particular underlying offense did not use those precise terms. *Id.* at 783–84, 786 (citing 565 U.S. 478, 483–85, 132 S. Ct. 1166, 1172–73 (2012)). Consequently, the proper question in this case is whether Prentice's state conviction involved conduct amounting to distribution of illegal drugs.

Prentice's suggestion that a state offense necessarily requires intent to "distribute" drugs only if one could not commit the offense without intent to actually hand over drugs, in a sale or exchange, is incompatible with *Shular.* Granted, a person who sells drugs might yet have no intention of actually handing over the drugs.[6] Nevertheless, *Shular* implicitly includes "sell" in the meaning of "distribute." *See* 140 S. Ct. at 785. Thus, the *Shular* Court did not interpret "distribute" as Prentice interprets it. Instead, the *Shular* Court focuses on conduct involving "intent to . . . distribute" as necessarily encompassing conduct *that is a part of a process of* distribution.

Moreover, it follows that one cannot intend to *offer* to sell (one of the actions defined within the Texas offense) without intending that offer to be taken by the buyer to be part of a process that concludes with the buyer's actually receiving what is offered. The precise reasoning of *Vickers, i.e.*, its interpretation of "involving," differs from that of *Shular* and seems at odds with *Shular's* focus on the underlying *conduct* charged in state offenses. But there is no doubt that the ACCA sentence upheld in *Vickers* would also be affirmed under *Shular.*

---

[6] In *Vickers*'s terms, this person might "not have any drugs to sell or even intend ever to obtain the drugs he is purporting to sell," 540 F.3d at 365.

In sum, contrary to Prentice's approach, *Shular* broadens the understanding of "a serious drug offense" by focusing on the underlying *conduct*. *Shular* dictates that the Texas offense of possessing with intent to deliver is conduct involving "distribution" of controlled substances under the ACCA, 18 U.S.C. § 924(e)(2)(A)(ii). Prentice's conviction for that "serious drug offense," plus his two convictions for the "violent felony" of burglary of a habitation, trigger the ACCA, *id.* § 924(e)(1), as the district court presciently decided. Ultimately, because the sentence became erroneously controlled by the now vacated *Herrold I*, the court did not apply the ACCA, and the case must be remanded to restore the original sentence.

## II.

According to Prentice, the court erred also by imposing the visitation condition. For the first time on appeal, he asserts that the visitation condition violates the Fourth Amendment, is not reasonably related to statutorily enumerated sentencing factors, and involves greater deprivation of liberty than is reasonably necessary to serve the purposes of supervised release. He also claims the district court erred in failing to give reasons for imposing the visitation condition.

Because Prentice did not object to the visitation condition in the district court, we review for plain error. *United States v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007). To establish plain error, Prentice must demonstrate (1) an unwaived "error or defect" that (2) is "clear or obvious" and (3) affected his "substantial rights." *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009). If Prentice satisfies these three criteria, the panel may "remedy the error . . . only if the error '"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."' *Id.* (quoting *United States v. Olano,* 507 U.S. 725, 736, 113 S. Ct. 1770, 1779 (1993)). "Meeting all four

prongs is difficult, 'as it should be.'" *Id.* (quoting *United States v. Dominguez Benitez,* 542 U.S. 74, 83 n.9, 124 S. Ct. 2333, 2340 n.9 (2004)).

During the pendency of this appeal, after both briefs on this issue were filed, another panel of this court published an opinion affirming imposition of the visitation condition. *United States v. Cabello*, 916 F.3d 543, 544 (5th Cir. 2019) (per curiam). Reasoning that the Fifth Circuit has not addressed the visitation condition's constitutionality or statutory reasonableness or whether a district court must give reasons for imposing it, the *Cabello* court found no plain error and rejected challenges identical to Prentice's. *Id.* *Cabello* has already been cited repeatedly for its holding that defendant-appellants cannot show plain error. *See, e.g., United States v. Kwan*, 772 F. App'x 148, 149 (5th Cir. 2019); *United States v. Dominguez-Villalobos*,774 F. App'x 226, 227 (5th Cir. 2019); *United States v. Ortiz-Najera*, 772 F. App'x 207, 208 (5th Cir. 2019).

This panel does the same. Following *Cabello*, Prentice cannot satisfy the second prong of plain error because any error was not "clear or obvious" and was instead "subject to reasonable dispute." *See Puckett*, 556 U.S. at 135. In imposing the visitation condition, the district court did not reversibly err.

## CONCLUSION

The Appellee's motion for stay is **DENIED**. The sentence of the district court is **VACATED**, and we **REMAND** for reinstatement of Prentice's original sentence.