[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12420

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEITH A. PENN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:20-cr-00079-RH-MAF-1

_____

Before LAGOA, BRASHER, and ED CARNES, Circuit Judges.

BRASHER, Circuit Judge:

After he pleaded guilty to several counts, including two violations of 18 U.S.C. § 922(g), the district court sentenced Keith Penn to the mandatory minimum sentence under the Armed Career Criminal Act. In doing so, the court concluded that Penn's two prior convictions for selling cocaine in violation of Florida Statutes § 893.13(1)(a) were "serious drug offense[s]" that Penn "committed on occasions different from one another." 18 U.S.C. § 924(e). Penn appeals both determinations.

Penn contends that his sale-of-cocaine offenses were not serious drug offenses under ACCA for two reasons. First, he argues a serious drug offense is an offense that requires proof that the defendant knew of the illicit nature of the controlled substance, which Section 893.13(1)(a) does not require. Second, he asserts that his sale-of-cocaine offenses are not serious drug offenses because Section 893.13(1)(a) proscribes attempting to transfer a controlled substance, which he says is not "distributing" a controlled substance and therefore the offense is not a serious drug offense under ACCA. He also contends that his sale-of-cocaine offenses, which involved the sale of similar amounts of cocaine to a confidential informant at the same location thirty days apart, did not occur on "occasions different from one another" and cannot both count toward an enhanced sentence under ACCA.

We disagree with Penn's contentions. Both of his arguments for why his sale-of-cocaine offenses are not serious drug offenses fail. Our precedent squarely forecloses his *mens rea* argument about the need to prove knowledge of the controlled substance's illicit nature. And attempted transfers of a controlled substance are "distributing" as ACCA uses the term. Likewise, his argument that his sale-of-cocaine offenses did not occur on separate occasions fails because he committed the crimes thirty days apart.

## I.

The facts of this appeal are straightforward and undisputed. Keith Penn pleaded guilty to five counts of cocaine- and firearm-related offenses. Two counts resulted from his possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g) and 924(e). Two more counts pertained to his violations of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c), which proscribe possessing cocaine with intent to distribute it. And the final count stemmed from his violation of 18 U.S.C. § 924(c)(1)(A)(i), which proscribes possession of a firearm in furtherance of a drug trafficking offense.

The presentence investigation report determined that Penn qualified for an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). ACCA mandates a minimum term of imprisonment of 15 years for "a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different

from one another." 18 U.S.C. § 924(e). In other words, an individual with three qualifying prior convictions, either for violent felonies or serious drug offenses, is an armed career criminal subject to a fifteen-year mandatory minimum. The presentence investigation report identified three such qualifying convictions here: Penn's conviction for armed robbery with a deadly weapon in violation of Florida Statutes § 812.13(2)(a) and his two convictions for selling cocaine in violation of Florida Statutes § 893.13(1)(a). Although Section 893.13(1)(a) proscribes several kinds of conduct (i.e., "sell[ing], manufactur[ing], or deliver[ing], or possess[ing] with intent to sell, manufacture, or deliver, a controlled substance"), the state court entered Penn's convictions specifically for the "sale of cocaine."

The report also described Penn's sale-of-cocaine offenses. On March 25, 2013, and April 24, 2013, Penn sold seven and fourteen grams respectively to a confidential source as part of a controlled purchase. Both sales occurred at Penn's home. Law enforcement arrested Penn in November of that year for the two offenses. And a Florida state court entered his convictions for the two offenses in 2015.

Before sentencing, Penn objected to his designation as an armed career criminal and the accompanying fifteen-year mandatory minimum. Although he did not contest that his armed robbery conviction is a "violent felony" under ACCA, he argued that his two sale-of-cocaine offenses were not "serious drug offense[s]."

Penn also argued that he did not commit the sale-of-cocaine offenses on "occasions different from one another," which ACCA requires if both offenses are to count toward his armed career criminal designation. But he did not specifically object to the report's description of the facts of his prior convictions.

At sentencing, the district court overruled Penn's objections. The court adopted as its findings the facts of Penn's prior convictions contained in the report. Based on the court's conclusion that Penn had three qualifying convictions under ACCA, it sentenced him to the minimum fifteen years' imprisonment with a consecutive sentence of five years' imprisonment for violating Section 924(c)(1)(i).

Penn timely appealed.

## II.

We review *de novo* a district court's determination that a prior conviction is a "serious drug offense" under ACCA. *United States v. Xavier Smith*, 983 F.3d 1213, 1222-23 (11th Cir. 2020). Federal law governs our construction of ACCA. *United States v. Jackson*, 55 F.4th 846, 850 (11th Cir. 2022). And state law governs our analysis of state-law offenses. *Id.* We also review *de novo* whether two offenses occurred on separate occasions for ACCA purposes. *United States v. Proch*, 637 F.3d 1262, 1265 (11th Cir. 2011).

### III.

Penn argues that the district court erred in imposing ACCA's mandatory minimum sentence. Under ACCA, a person who violates 18 U.S.C. § 922(g) and has three previous convictions for either "a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e). ACCA provides that a state-law offense is a "serious drug offense" if it is one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii). Here, Penn was convicted of two counts of selling cocaine under a Florida statute that provides "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a).

Penn makes three arguments that the district court miscounted his cocaine convictions for the purposes of ACCA. First, he argues that a serious drug offense must have a *mens rea* element requiring that the defendant know of the illicit nature of the controlled substance that he possesses, which Section 893.13(1)(a) lacks. Second, he argues that Section 893.13(1)(a) proscribes a broader range of conduct than the definition of "serious drug offense" covers. Third, he argues that his drug offenses were not committed "on occasions different from one another." We take each argument in turn.

### A.

Controlling precedent squarely forecloses Penn's *mens rea* argument. In *United States v. Travis Smith*, 775 F.3d 1262 (11th Cir. 2014), we ruled that "[n]o element of *mens rea* with respect to the illicit nature of the controlled substance is expressed or implied" by the definition of a "serious drug offense." *Id.* at 1267. Then, in *Shular v. United States*, 140 S. Ct. 779 (2020), the Supreme Court affirmed our judgment, *id.* at 787, that a conviction under Florida Statutes § 893.13(1)(a)—the very provision at issue in this case—qualifies as a serious drug offense, even though it does not require that the defendant know the substance is illicit, *United States v. Shular*, 736 F. App'x 876, 877 (11th Cir. 2018). The Court ruled that Congress intended ACCA to apply "to all offenders who engaged in *certain conduct*" rather than "all who committed certain generic offenses" based on the elements of their prior convictions. *Shular*, 140 S. Ct. at 787 (emphasis added). Later, in *Xavier Smith*, we ruled that *Travis Smith* and *Shular* foreclosed the argument that Section 893.13(1)(a)'s lack of a *mens rea* element as to the illicit nature of the controlled substance means it is not a serious drug offense. 983 F.3d at 1223. And finally, in *Jackson*, we relied on these precedents in stating that we have repeatedly "rejected the argument that Section 893.13(1) cannot qualify as a 'serious drug offense' under ACCA because it lacks a mens rea element." 55 F.4th at 852-53. Simply put, Penn's *mens rea* argument is a nonstarter.

*B.*

Turning to Penn's second argument, we must answer a question of first impression about whether Penn's convictions under Section 893.13(1)(a) for "sell[ing]" cocaine may be counted as serious drug offenses under ACCA. Relying on a Florida jury instruction, Penn argues that Section 893.13(1)(a) proscribes a broader range of conduct than ACCA's definition of "serious drug offense" covers. We disagree.

As often happens under ACCA, we face "a simple question with a surprisingly complicated answer." *Alvarado-Linares v. United States*, 44 F.4th 1334, 1338 (11th Cir. 2022). Our resolution of this question proceeds in three parts. First, we explain why our existing precedent does not resolve the issue. Second, we identify the least culpable conduct made illegal by the state statute, which is "attempted transfer" of a controlled substance for value. Third, we conclude that the least culpable conduct prohibited by Section 893.13(1)(a) fits within the definition of a serious drug offense— that is, it is an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance."

1.

Pointing to *Travis Smith* and *Xavier Smith*, the government contends that the prior panel precedent rule requires us to conclude that Penn's convictions under Section 893.13(1)(a) are serious drug offenses because we have concluded that such convictions

were serious drug offenses before. We disagree. To be sure, we are bound by the decisions of prior panels of this Court, which "'cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel.'" *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (quoting *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006)). But "assumptions are not holdings." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016). And any "answers" to questions neither presented nor decided are not precedent. *Jackson*, 55 F.4th at 853. Neither *Travis Smith* nor *Xavier Smith* addressed Penn's argument that Section 893.13(1)(a) criminalizes a broader range of conduct than is covered by ACCA's definition of "serious drug offense."

In any event, our recent decision in *Jackson* forecloses the government's argument about how to apply our pre-*Jackson* precedents. There, the government made the same argument that it makes here: the government argued that our precedents conclusively establish that Section 893.13(1)(a) is a serious drug offense no matter any defendant's argument to the contrary. *See Jackson*, 55 F.4th at 853. We rejected the government's argument in *Jackson*, *id.* at 853-54, and we reject it in this case, too. We explained in *Jackson* that *Travis Smith* and *Xavier Smith* presented and decided two questions: (1) "whether the definition [of 'serious drug offense'] requires that the state offense match certain generic offenses" and (2) whether the lack of a *mens rea* element as to the illicit nature of the controlled substance means Section 893.13(1)(a) is not a serious drug offense. *Jackson*, 55 F.4th at 853. Neither *Travis Smith* nor

*Xavier Smith* answers the question Penn has asked us to resolve: whether Section 893.13(1)(a) prohibits conduct that goes beyond the definition of a serious drug offense.

2.

We now turn to the elements of Penn's state-law convictions. We apply the familiar "categorical approach" to determine whether a state-law offense is a "serious drug offense." *See United States v. Robinson*, 583 F.3d 1292, 1295 (11th Cir. 2009). No matter the defendant's underlying conduct, a state conviction cannot be an ACCA predicate if the statute of conviction proscribes a broader range of conduct than what Section 924(e)(2)(A)(ii) defines as a "serious drug offense." *United States v. Stancil*, 4 F.4th 1193, 1197 (11th Cir. 2021). We therefore look to the "'least of the acts criminalized by the [state] statute'" and ask whether that act falls within the ambit of ACCA's definition of a "serious drug offense." *Id.* (quoting *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020)).

There are two wrinkles to the analysis in this case. First, we must analyze the elements of the offense based on state law *at the time of Penn's conviction*. *See McNeill v. United States*, 563 U.S. 816, 820 (2011). In 2015 (the year a Florida court entered Penn's two sale-of-cocaine convictions), the language of Section 893.13(1)(a) was "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a) (2015). Second, this statute is

"divisible" because it can be violated in alternative ways—e.g., sell, manufacture, deliver, etc. *Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1177 (11th Cir. 2016) (holding this statute to be divisible). Because the statute is divisible into alternative elements, we must analyze only the elements of the crime of conviction. *Id.* Here, Penn's convictions involved the "sell" element, so that must be the focus of our inquiry.

Penn contends (and the government concedes) that the least culpable act that Section 893.13(1)(a) proscribed in 2015 is the "attempted transfer" of a controlled substance for value. We agree. Under the 2014 amendments to the Florida pattern jury instructions for Section 893.13(1)(a), "'sell' means to transfer or deliver something to another person in exchange for" a thing of value or a promise for a thing of value. *In re Standard Jury Instructions in Crim. Cases-Report No. 2013-05*, 153 So. 3d 192, 196 (Fla. 2014). And "'[d]eliver' or 'delivery' means the actual, constructive, or *attempted transfer* from one person to another of a controlled substance." *Id.* (emphasis added). The Florida Standard Jury Instructions in Criminal Cases "enjoy a presumption of correctness" because the Florida Supreme Court approves those instructions. *State v. Floyd*, 186 So. 3d 1013, 1019 (Fla. 2016). Because the presumption of correctness that attaches to these jury instructions has not been rebutted, we conclude that the attempted transfer of a controlled substance for value is the least culpable act covered by Section 893.13(1)(a)'s proscription of the sale of a controlled substance.

3.

Having identified the least culpable act that Florida law prohibits, the question becomes whether the attempted transfer of a controlled substance is covered by the definition of a "serious drug offense." That is, does the attempted transfer of a controlled substance "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance?" 18 U.S.C. § 924(e)(2)(A)(ii). The Supreme Court has told us to answer questions like this one by determining whether a state law offense criminalizes the *conduct* specified in ACCA, no matter the legal elements of the offense. *Shular*, 140 S. Ct. at 782. To that end, the government argues that the conduct of "attempted transfer" fits within the meaning of "distributing" as Section 924(e)(2)(A)(ii) uses the word. We agree.

We think the ordinary meaning of the word "distribute," which is the verb form of "distributing," encompasses attempted transfers. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). The word "distribute," at its core, refers to the process of "pass[ing] out" or "deal[ing] out" something to other people. *E.g.*, The Oxford English Dictionary 867 (2d ed. 1989); *American Heritage Dictionary* 410 (2d coll. ed. 1982). That process includes the acts of "promot[ing], sell[ing], and ship[ping] or deliver[ing]." *The Random House Dictionary of the English Language* 572 (2d unabridged ed. 1987). In other words,

although the final transfer of an item is part of the core of "distribute," other steps leading up to the ultimate transfer are part of distribution, too.

Moreover, state statutes relating to controlled substances establish that the ordinary meaning of "distributing" encompasses attempted transfers. More than half the states around the time Congress enacted ACCA expressly defined "distributing" in their drug laws to include the attempted transfer of a controlled substance.[1]

---

[1] *E.g.*, 1983 Ark. Acts no. 787, §§ 1-2 (defining "delivery" to include attempted transfers); Cal. Health & Safety Code §§ 11009, 11012 (1975) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Colo. Rev. Stat. § 12-22-303(8), (12) (1981) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Del. Code Ann. tit. 16, § 4701(7), (10) (1983) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Ga. Code Ann. § 16-13-21(7), (11) (1982) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Idaho Code Ann. § 37-2701(f), (i) (1983) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Ill. Rev. Stat. ch. 56 1/2, para. 1102(h), (r) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Iowa Code § 204.101(8), (11) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Kan. Stat. Ann. § 65-4101(g), (j) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Mich. Comp. Laws § 333.7105(1), (4) (1980) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Mo. Rev. Stat. § 195.010(8), (13) (1971) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Neb. Rev. Stat. § 28-401(10), (13) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); 1971 Nev. Stat. 2000 (defining "distribute" to include attempted transfers); 1985 N.J. Laws ch. 134, § 2 (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); 1981 N.M. Laws ch. 31, § 1 (defining "distribute"

The Uniform Controlled Substances Act of 1970 also defined "distribute" to cover attempted transfers. Unif. Controlled Substances Act § 101 (Unif. L. Comm'n 1970). When Congress used the word "distributing," it was well-established that the term ordinarily included an attempt to transfer drugs.

---

to mean "to deliver" and "deliver" to include attempted transfers); N.Y. Pub. Health Law § 3302(8), (12) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); N.C. Gen. Stat. § 90-87(7), (10) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); N.D. Cent. Code § 19-03.1-01(6), (9) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Okla. Stat. tit. 63 § 2-101(10), (12) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Or. Rev. Stat. § 475.005(8), (12) (1987) (defining "distributor" to mean "a person who delivers" and "deliver" to include attempted transfers); Pa. Cons. Stat. § 780-102 (1972) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); R.I. Gen. Laws § 21-28-1.02(8), (14) (1974) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); 1971 S.C. Acts 445 (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); 1985 S.D. Sess. Laws ch. 185, § 2 (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Utah Code Ann. § 58-37-2(6), (8) (1982) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Va. Code Ann. § 54.1-3401(8), (11) (1980) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Wash. Rev. Code § 69.50.101(f), (i) (1985) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); W. Va. Code § 60A-1-101(g), (j) (1986) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Wis. Stat. § 961.01(6), (9) (1983) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers); Wyo. Stat. Ann. § 35-7-1002(a)(vi), (ix) (1982) (defining "distribute" to mean "to deliver" and "deliver" to include attempted transfers).

The meaning of "distribute" in the Controlled Substances Act—another federal statute on the same subject—also strongly supports reading "distributing" in ACCA to encompass attempted transfers. Just like ACCA uses the word "distributing," the Controlled Substances Act uses "distribute"—the verb form of the word. 21 U.S.C. § 841(a)(1). Specifically, the Controlled Substances Act makes it unlawful for a person to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *Id.* But, unlike ACCA, the Controlled Substances Act fleshes out the meaning of the term. It expressly defines "distribute" as "deliver" and defines "deliver" to mean "the actual, constructive, or *attempted transfer* of a controlled substance." 21 U.S.C. § 802(8) (emphasis added); *id.* § 802(11).

We prefer to read terms consistently across multiple statutes on the same subject because "practical experience in the interpretation of statutes" establishes that "a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972); *accord Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1158-59 (11th Cir. 2014) (explaining *in pari materia* analysis). Both federal statutes address the same problem in the same context. The Controlled Substances Act establishes federal drug offenses that prohibit "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances." 21 U.S.C.

§ 801(2); *id.* §§ 841-865. And ACCA enhances the sentences of certain defendants who have committed "serious drug offense[s]." *See* 18 U.S.C. § 924(e). ACCA defines "serious drug offense" by reference to state law, but also by reference to federal offenses, which includes the ones in the Controlled Substances Act. Finally, the Controlled Substances Act and ACCA are relatively contemporaneous with only fourteen years separating their enactments. *Compare* Controlled Substances Act, Pub. L. No. 91-513, § 100, 84 Stat. 1236, 1242 (1970), *with* Armed Career Criminal Act of 1984, Pub. L. No. 98-473, § 1801, 98 Stat. 1837, 2185.

Instead of straining to give the word "distributing" a special meaning in ACCA, we believe it is better to read the word in ACCA *in pari materia* with "distribute" in the Controlled Substances Act. Obviously, an idiosyncratic or specialized definition of a term in one statute does not necessarily carry over to the use of the same term in another statute where that term is undefined. Here, however, we believe the definition of "distribute" in the Controlled Substances Act—a closely related statute—is further evidence that the word's ordinary meaning in the context of federal drug law includes an attempted transfer.[2] *See Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 468 U.S. 137, 150-51 (1984) (noting that consistent statutory definitions can establish ordinary meaning).

---

[2] To be clear, we do not hold that Section 924(e)(2)(A)(ii) expressly incorporates definitions from the Controlled Substances Act. The government argues that the parenthetical in Section 924(e)(2)(A)(ii), which expressly incorporates definitions from the Controlled Substances Act, modifies more than just the

21-12420                Opinion of the Court                    17

Finally, we note that our ordinary meaning reading of "distributing" is consistent with the law of other circuits. *See United States v. Prentice*, 956 F.3d 295, 300 (5th Cir. 2020). The Fifth Circuit has concluded that "possession with intent to deliver" is "distributing." *Id.* at 298-300. That court reasoned that possessing a controlled substance with the intent to deliver it is "conduct *that is part of a process of* distribution." *Id.* at 300. The court also noted that the Supreme Court's decision in *Shular* "implicitly includes 'sell' in the meaning of 'distribute'" even though "a person who sells drugs might yet have no intention of actually handing over the drugs." *Id.* The point is that many actions besides the actual transfer of a controlled substance fall within the ordinary meaning of the process of "distributing." We conclude that an attempted transfer is one of those actions.

We could stop here at ordinary meaning. But for the sake of completeness, we will identify two more reasons we believe "distributing" is best interpreted to include an attempted transfer.

---

term "controlled substance," which immediately precedes it in the provision. We disagree. Reading the parenthetical to modify "distributing" would require reading it to modify "manufacturing" and "possessing," too. But the Controlled Substances Act does not provide a definition of "possess" like it does for "distribute" and "manufacture." *See* 21 U.S.C. § 802. Moreover, the nearest-reasonable-referent canon indicates that the parenthetical modifies only the term "controlled substance"—the parenthetical's nearest reasonable referent—because the syntax of the provision is not a parallel series of nouns or verbs. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 152 (2012).

First, where it is consistent with ordinary meaning, it makes sense to read the two ACCA provisions that define the predicate crimes that count as a "serious drug offense" —one for state crimes and one for federal crimes—to cover the same kind of criminal conduct. ACCA defines "serious drug offense" in two separate provisions. Section 924(e)(2)(A)(i) incorporates various federal offenses as "serious drug offense[s]." Section 924(e)(2)(A)(ii), the provision at issue here, identifies which state crimes counts as "serious drug offense[s]." Both provisions identify predicate crimes that are sufficiently serious to subject a defendant to Section 924(e)'s mandatory minimum. It would be anomalous for a state offense that is virtually identical to a federal serious drug offense to not also be a serious drug offense. *See Lockhart v. United States*, 577 U.S. 347, 353-54 (2016). After all, as the Supreme Court has recognized, there is no reason to think federal offenders "are more culpable, harmful, or worthy of enhanced punishment than offenders with nearly identical state priors." *Id.* at 354.

There is no dispute that a federal conviction for "attempted transfer" of a controlled substance would count as a serious drug offense. Specifically, one of the federal predicates that is a "serious drug offense" under ACCA is a conviction under 21 U.S.C. § 841(a)(1). That provision proscribes the knowing or intentional distribution of a controlled substance, which federal law defines to include attempted transfers. *Id.* §§ 802(8), (11), 841(a). This federal offense "'criminalize[s] "participation in the transaction viewed as whole."'" *United States v. Cortés-Cabán*, 691 F.3d 1, 19 (1st Cir.

21-12420                Opinion of the Court                19

2012) (quoting *United States v. Ahumada-Avalos*, 875 F.2d 681, 683 (9th Cir. 1989)). It covers "'not only the transfer of physical possession, but also other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price.'" *Id.* (quoting *United States v. Luster*, 896 F.2d 1122, 1127 (8th Cir. 1990)); *accord United States v. Azmat*, 805 F.3d 1018, 1034 (11th Cir. 2015) (holding that writing a prescription for a controlled substance effects constructive delivery sufficient to satisfy the actus reus for Section 841(a)(1)).

Because of this well-established federal law, Penn's reading of "distributing" would mean that whether a defendant convicted for the attempted transfer of a controlled substance is subject to ACCA's fifteen-year mandatory minimum would turn on whether a state court or federal court entered the conviction. To be sure, there need not be a perfect match between ACCA state predicates and federal predicates. But we should not strain to develop a definition for "distributing" that would create an anomalous result as between the two sections of the same statute. *See Bowen v. Massachusetts*, 487 U.S. 879, 913-15 (1988) (Scalia, J., dissenting) (interpreting a term to avoid creating "a gap in the [two statutes'] scheme of relief—an utterly irrational gap, which we have no reason to believe was intended"); *Gallardo v. Dudek*, 963 F.3d 1167, 1178 n.15 (11th Cir. 2020) (explaining that two statutes on the same subject should be read in harmony rather than to conflict, where possible).

Second, Penn's narrow reading of "distributing" runs counter to the Supreme Court's reasoning in *Shular* and Congress's

manifest objective in enacting ACCA. In *Shular*, the Court explained that Section 924(e)(2)(A)(ii) was addressed to conduct, not elements, to sweep in the multitude of state drug offenses that lack the deep common law roots of other offenses, like burglary. *Shular*, 140 S. Ct. at 786. The Court recognized that "[s]tates define core drug offenses with all manner of terminology, including: trafficking, selling, giving, dispensing, distributing, delivering, promoting, and producing." *Id.* (quotation omitted). The Court therefore concluded that the state offenses need not have the same elements as "generic" versions of those offenses. *Id.* at 782. The point is that Section 924(e)(2)(A)(ii)'s focus on conduct expands, rather than contracts, the provision's scope. *Prentice*, 956 F.3d at 300. Congress's goal was to cover the many varieties of serious state drug offenses that existed at the time. *See Shular*, 140 S. Ct. at 786.

As we have explained, around the time of ACCA's enactment, more than half the states defined "distributing" to include the attempted transfer of a controlled substance. Those state definitions strongly support our conclusion that the ordinary meaning of "distributing" at the time of ACCA's enactment included attempted transfers. But those state statutes also establish that reading ACCA not to cover attempted transfers would mean Congress failed to capture over half the states' distribution offenses when it used the word "distributing" in ACCA. In other words, Penn's reading of the statute would render ACCA's coverage of distribution "'a dead letter'" in over half "of the States from the very moment of its enactment." *See United States v. Hayes*, 555 U.S. 415,

427 (2009) (declining to construe a statute in a way that would mean Congress failed to capture state-law predicates from two-thirds of the states from the moment of the statute's enactment).

For his part, Penn makes two arguments against this reading of the definition of "serious drug offense." First, he argues that *Shular* supports his position because the attempted transfer of a controlled substance does not "necessarily entail" the conduct of "distributing." Second, he argues that inchoate offenses—such as attempts and conspiracies—can never be serious drug offenses, and, for that reason, he says an attempted transfer cannot be a serious drug offense. We disagree on both fronts.

First, *Shular* does not help Penn. Penn relies on *Shular*'s reading of "involving" in Section 924(e)(2)(A)(ii). In *Shular*, the Supreme Court agreed with the government that the relevant question under the categorical approach is "whether the state offense's elements necessarily entail one of the types of conduct identified in § 924(e)(2)(A)(ii)." 140 S. Ct. at 784-86 (cleaned up). We have since embraced that reading of "involving." *See United States v. Conage*, 976 F.3d 1244, 1252-53 (11th Cir. 2020); *Chamu v. U.S. Att'y Gen.*, 23 F.4th 1325, 1333 (11th Cir. 2022). Penn says that attempting to transfer a controlled substance does not necessarily entail "distributing." Penn's argument is that attempting to transfer something is not close enough to "distributing" for it to necessarily entail "distributing."

But *Shular*'s use of the phrase "necessarily entail[s]" does not help Penn. Because "distributing" means attempting to transfer

drugs, Florida law's proscription of attempted transfers *is a proscription of distribution itself.* There is a perfect match between what the state offense proscribes and what is "distributing." If ACCA hypothetically covered offenses "prohibiting" the conduct of "distributing" instead of those "involving" that conduct, the result would still be the same. The conduct that Section 893.13(1)(a) prohibits—attempting to transfer—is not merely related to distributing, it is "distributing." *Shular*'s reading of "involving" as "necessarily entails" has no bearing on this case.

Second, we do not have to decide—and are not deciding—whether and to what extent inchoate crimes are "serious drug offense[s]." Penn points out, correctly, that we have interpreted similar language to that of Section 924(e)(2)(A)(ii) in U.S.S.G. § 4B1.2 to exclude inchoate offenses. *United States v. Dupree*, 57 F.4th 1269, 1277-79 (11th Cir. 2023) (en banc). But we need not address *Dupree*'s reasoning because we believe that Florida's prohibition on drug sales, even if defined to include an attempted transfer, is not an inchoate offense. Rather, as explained below, we believe that attempts to transfer drugs are part of *completed* sale offenses.

We start with well-established federal law. The Controlled Substances Act forbids distribution and separately forbids attempts and conspiracies to distribute. *See* 21 U.S.C. §§ 841(a), 846. But a defendant who attempts to transfer drugs commits the completed crime of distribution, not the inchoate crime of attempted distribution. *See Cortés-Cabán*, 691 F.3d at 19; *Azmat*, 805 F.3d at 1034 (involving constructive transfer under Section 841(a)(1)). Although

the Controlled Substances Act defines "distribute" as, in part, the attempted transfer of a controlled substance, "that does not make the crime of conviction under § 841 an *attempted* distribution." *United States v. Havis*, 929 F.3d 317, 318-19 (6th Cir. 2019) (Sutton, J., concurring in the denial of en banc reconsideration). "[I]n defining distribution, it appears that Congress used the ordinary meaning of 'attempted transfer,' not its legal term-of-art meaning." *Id.* at 319. And so, "[w]hen someone attempts to transfer drugs in the ordinary sense, he has distributed drugs and violated § 841; but when someone attempts to distribute drugs in the legal sense, he has attempted only to distribute (or attempted to attempt to transfer) drugs and violated § 846." *Id.* It follows that "[a] conviction for distributing drugs is not, then, a conviction for attempting a drug crime." *Id.* Based on this reasoning, two of our sister circuits have held that comparable state law drug offenses are not inchoate crimes for the purposes of calculating sentencing enhancements. *See United States v. Dawson*, 32 F.4th 254, 259-60 (3d Cir. 2022) (holding that Pennsylvania "drug 'delivery' is a complete offense, whether it is committed via actual or attempted transfer of drugs"); *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (holding the same for Michigan state offense).

Just as the attempted transfer of drugs constitutes a completed distribution offense under federal law, the attempted transfer of drugs forms part of the completed sale-of-drugs offense under Florida law. The sale of drugs is not an inchoate offense under Florida law. Florida law separately criminalizes the sale of drugs and

the attempted sale of drugs. See Milazzo v. State, 377 So. 2d 1161, 1163 (Fla. 1979). To be sure, a jury may find a defendant guilty of selling drugs if it finds, in part, the defendant attempted to transfer those drugs to someone else. See In re Standard Jury Instructions, 153 So. 3d at 196. But a finding that a defendant attempted to transfer drugs does not mean the defendant committed an attempted sale offense. Rather, "the attempted transfer [is] sufficient to constitute the act of delivery." Milazzo, 377 So. 2d at 1162. Whether a jury finds that a defendant successfully sold drugs (i.e., delivered them for value) or merely attempted to do so is a separate question. See id. at 1163. Thus, like the crime of distribution under federal law, the crime of selling drugs under Florida law is not an inchoate offense.

Accordingly, we hold that the conduct of "distributing" in Section 924(e)(2)(A)(ii) includes attempted transfers of controlled substances. Therefore, Penn's convictions under Section 893.13(1)(a) are serious drug offenses because the least culpable act that Section 893.13(1)(a) proscribes is an attempted transfer.

## C.

Having held that Penn's sale-of-cocaine convictions are serious drug offenses, we turn to his final contention—that he is not an armed career criminal because he did not commit his two sale-of-cocaine offenses on separate occasions and therefore his convictions for those offenses count only once for purposes of Section 924(e). We disagree.

We determine whether two offenses occurred on the same "occasion" based on the ordinary meaning of the word—"essentially an episode or event." *Wooden v. United States*, 142 S. Ct. 1063, 1069 (2022). Several factors may be relevant to that determination: the amount of time between offenses, the proximity of the locations where the offenses occurred, and whether the offenses are part of the same scheme or achieve the same objective. *Id.* at 1070-71. But "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* at 1071. For example, the Supreme Court noted that lower courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.* "Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events." *Id.*

No reasonable person would say that Penn's two sales of cocaine, thirty days apart, occurred on the same occasion. Penn's offenses no more occurred on the same occasion than two baseball games between the same teams at the same stadium one month apart. Whatever the similarities between Penn's offenses, the similarities cannot overcome the substantial gap of time between the offenses. A closer case—but by no means an easy one—would be one involving "a defendant who sells drugs to the same undercover police officer twice at the same street corner *one hour apart*." *Id.* at 1080 (Gorsuch, J., concurring in the judgment) (emphasis added).

Here though, the answer is obvious: Penn's two sale-of-cocaine offenses did not occur on the same "occasion" in the ordinary sense of the word.

Lastly, we address a related issue that Penn raised for the first time on appeal. Penn contends under the Fifth and Sixth Amendments a jury must find, or a defendant must admit, that two offenses occurred on separate occasions. Because Penn did not raise this issue below, we review it for plain error. *See United States v. Kushmaul*, 984 F.3d 1359, 1363 (11th Cir. 2021). "'[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [the issue].'" *Id.* (quoting *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006)). Penn cannot prevail on his belated constitutional challenge because there is no precedent from the Supreme Court or this Court directly resolving the issue. Whatever the merits of the underlying argument, Penn cannot establish plain error.

## IV.

For these reasons, we hold that "distributing" in Section 924(e)(2)(A)(ii) includes attempting to transfer a controlled substance. Because the least culpable act covered by Florida's prohibition of the sale of a controlled substance under Section 893.13(1)(a) is the attempted transfer of a controlled substance for value, Penn's two convictions for violating that section are "serious drug offense[s]." Penn also did not commit those offenses on the same "occasion" within the ordinary meaning of the word. Therefore, the

district court lawfully sentenced Penn to ACCA's fifteen-year mandatory minimum, along with a consecutive five years' imprisonment for violating Section 924(c)(1)(i). Accordingly, the district court is **AFFIRMED.**