[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14202

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TERRELL ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00049-PGB-DCI-1

_____

Before GRANT, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Terrell Robinson appeals his 180-month imprisonment sentence for possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), and possession with intent to distribute cocaine, methamphetamine, fentanyl, and MDMA, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  On appeal, he argues that his Fifth and Sixth Amendment rights were violated when he was sentenced under the Armed Career Criminal Act (ACCA) without a jury finding beyond a reasonable doubt that his prior offenses were committed on different occasions, as required by *Erlinger v. United States*, 602 U.S. 821 (2024).  He also argues that the district court failed to adequately pronounce the standard conditions of supervised release at sentencing such that he was not afforded an adequate opportunity to object, in violation of his due process rights.  After careful review, we affirm.

## I.

A person who violates § 922(g) is subject to a fine or a term of imprisonment of up to 15 years.  18 U.S.C. § 924(a)(8).  At the same time, the ACCA requires that any person who violates 18 U.S.C. § 922(g) serve a mandatory minimum sentence of 15 years when the defendant has three prior convictions for violent felonies or serious drug offenses "committed on occasions different from one another."  *Id.* § 924(e)(1).

In *Erlinger*, the Supreme Court held that judicial factfinding by a preponderance of evidence that a defendant has three ACCA predicate convictions committed on different occasions violates the Fifth Amendment's guarantee of due process of law and the Sixth Amendment's guarantee to a jury trial. 602 U.S. at 833–34. The Court held that this finding must be made "by a unanimous jury beyond a reasonable doubt." *See id.* at 834. In explaining its reasoning, the Court noted that its decision was as "on all fours with *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] . . . as any [it] might imagine." *Id.* at 835. The Court explained that "no particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones." *Id.* at 841. The Court also noted that "in many cases the occasions inquiry will be 'straightforward,'" such as when "a defendant's past offenses [are] different enough and separated by enough time and space that there is little question he committed them on separate occasions," though the Court stressed that this finding must still be made by a jury rather than a judge. *Id.* at 842.

In *Wooden v. United States*, the Supreme Court noted that several factors may be relevant to the determination of whether ACCA predicate offenses occurred on occasions separate from one another: the time between offenses, the proximity of the locations where the offenses occurred, and whether the offenses are part of the same scheme or achieve the same objective. 595 U.S. 360, 367–71 (2022). But the Court stated that "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* at 369–70. "Offenses committed close in time, in an

uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events." *Id.* at 369.

In *United States v. Penn*, we "determine[d] whether two offenses occurred on the same occasion based on the ordinary meaning of the word." 63 F.4th 1305, 1318 (11th Cir. 2023) (internal quotation marks omitted). Applying *Wooden*, we concluded that "the answer [wa]s obvious": the defendant's offenses, which occurred thirty days apart, "did not occur on the same occasion." *Id.* (quotation marks omitted). We noted that a closer case "would be one involving a defendant who sells drugs to the same undercover police officer twice at the same street corner one hour apart." *Id.* (internal quotation marks omitted).

In *United States v. Rivers*, we held that *Erlinger* error is not structural and may be reviewed for harmless error. 134 F.4th 1292, 1305 (11th Cir. 2025). We noted that on harmless-error review of an *Erlinger* different-occasions issue, "the government bears the burden of showing beyond a reasonable doubt that a rational jury would have found that the defendant's prior drug offenses all were committed on occasions different from one another." *Id.* at 1306 (quotation marks omitted). We concluded that the government failed to show that any *Erlinger* error was harmless because a jury could reasonably conclude that Rivers's prior offenses "were part of a single criminal episode" orchestrated by an undercover officer. *Id.* at 1307. All four of Rivers's prior drug offenses occurred in an eight-day time period in the same neighborhood—though in

different precise locations—and were all small drug sales, three of which involved a substance mixed with fentanyl, to the same undercover officer. *Id.*

Here, Robinson's first predicate offense stemmed from the sale of cocaine in May 2006, resulting in a conviction for cocaine delivery; his second predicate offense stemmed from an attempt to hit a police officer with his car in October 2007, resulting in an aggravated assault with a deadly weapon conviction; and his third predicate offense stemmed from the sale or possession of cocaine in August 2009. Though "no particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones," this situation is likely a "straightforward" one "separated by enough time and space," that a reasonable jury could not find that any of Robinson's three prior offenses stemmed from the same occasion. *Erlinger*, 602 U.S. at 841–42; *see Wooden*, 595 U.S. at 369–70; *Penn*, 63 F.4th at 1318. Robinson's three predicate offenses were months and years apart in time and involved different types of offenses, specifically including a cocaine delivery offense, an aggravated assault, followed by another cocaine delivery offense.

Thus, a rational jury would have found that the Robinson's prior offenses all were committed on occasions different from one another; therefore Robinson cannot meet the harmless-error standard on his *Erlinger* challenge. *Rivers*, 134 F.4th at 1306.

## II.

If the court fails to elicit objections to the conditions of supervised release at sentencing, or if the defendant lacks an

opportunity to object because the conditions are "included for the first time in the written judgment," we review legal challenges to the conditions of supervised release at sentencing de novo. *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023). However, if the defendant had sufficient notice that there were discretionary conditions attached to his supervised release but failed to object, we review for plain error. *United States v. Hayden*, 119 F.4th 832, 838 (11th Cir. 2024).

"A district court may impose any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Tome*, 611 F.3d 1371, 1375 (11th Cir. 2010). Section 3583 of Title 18 of the U.S. Code imposes several mandatory conditions of supervised release and provides that the court may order further conditions. 18 U.S.C. § 3583(d). The Guidelines allow the court to impose other discretionary conditions and provide 13 standard conditions that are generally recommended, as well as several special conditions. U.S.S.G. § 5D1.3(b)-(d).

In *Rodriguez*, we held that a district court violated the defendant's right to due process by failing to orally pronounce discretionary conditions of supervised release at sentencing that were included in a later written judgment. *Rodriguez*, 75 F.4th at 1247–49. Discretionary conditions include any condition other than the mandatory conditions listed in § 3583(d). *Id.* at 1247. We held that the mere existence of a standing order recommending those conditions of supervised release did not satisfy due process and that the

district court failed to reference that order or otherwise indicate that it was adopting conditions of supervised release beyond those mandated by statute. *Id.* at 1249. We noted that district courts can satisfy due process by referencing a written list of supervised release conditions because, by doing so, a defendant who is unfamiliar with those conditions will have the opportunity to inquire about and challenge them. *Id.* at 1248–49 & n.7.

In *Hayden*, we concluded that the district court did not err under *Rodriguez* when the court stated that the defendant would have to comply with "the mandatory and standard conditions adopted by the Court in the Middle District" while on supervised release in its oral pronouncement and then described those conditions in detail in the written judgment. 119 F.4th at 835–36. First, we concluded that plain error review applied because unlike in *Rodriguez*, Hayden had notice at sentencing that there were standard conditions attached to his supervised release but failed to object to the district court's failure to describe each of the standard conditions. *Id.* at 838. We held that the district court did not err, much less plainly err, because the district court orally referenced the discretionary standard conditions of supervised release for the Middle District of Florida and the oral pronouncement and written judgment did not conflict, as the conditions were listed in the publicly available judgment form and tracked the standard conditions of supervised release in the relevant guideline. *Id.* at 838–39. We concluded that "the written judgment specifies what the oral pronouncement had already declared." *Id.* at 839.

Here, the district court did not plainly err in imposing the standard conditions of supervision because the PSI and the court pointed Robinson to a written list of the conditions to be imposed that conformed with the conditions ultimately included in the written judgment.  The court stated: "While you're on supervised release, you'll have to comply with a number of conditions imposed by Probation that are found at United States Sentencing Guideline 5D1.3, subparts (a) and (c)."  These are the same conditions imposed in the written order; therefore, Robinson had notice of the conditions and an opportunity to object to them.  His due process rights were not violated.

**AFFIRMED.**