[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13905

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MICHAEL VENETEZ MCRAE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:19-cr-00125-JRH-BKE-1

_____

Before NEWSOM, GRANT and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Michael Venetez McRae appeals his convictions for possession of a firearm by a prohibited person and possession of a controlled substance, and he appeals the district court's imposition of his 235-month total sentence. McRae asserts several errors on appeal: (1) the district court lacked jurisdiction over this case because the Double Jeopardy Clause prohibited him from being federally prosecuted for the same offense conduct as that charged in a state indictment, and because his speedy trial rights were violated; (2) the district court erred by denying his motion to suppress as to a firearm and his statements related thereto, based on the public safety exception, the inevitable discovery doctrine, and implied consent; (3) the district court erred in permitting him to waive his right to counsel because his waiver was not knowing and voluntary; and (4) the district court erred in sentencing him under the Armed Career Criminal Act ("ACCA"). After reading the parties briefs and reviewing the record, we affirm McRae's convictions and sentence.

## I.

### (A) Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment protects a defendant against successive prosecutions for the same criminal offense, providing that no person may "be twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend. V;

*United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1360 (11th Cir. 1994). Nevertheless, under the dual sovereignty doctrine, a defendant may be subject to successive prosecutions by two sovereigns for the violation of each of their laws if his conduct gives rise to two separate offenses. *Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 66-67, 136 S. Ct. 1863, 1870 (2016). Thus, because the state and federal government are separate sovereigns, a prior state conviction does not preclude the federal government from prosecuting the defendant for the same conduct. *See id.*

Reviewing *de novo* McRae's double jeopardy challenge, we find no error. *United States v. McIntosh*, 580 F.3d 1222, 1226 (11th Cir. 2009). Because the Double Jeopardy Clause does not prohibit McRae from being federally prosecuted for the same offense conduct as that charged in a state indictment, we conclude that the district court did not lack jurisdiction over the case.

### (B) Speedy Trial Rights

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, prescribes deadlines and identifies causes of delay that excuse strict compliance with those deadlines. "The primary purpose of the Speedy Trial Act is to accelerate criminal trials." *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982). Thus, the Speedy Trial Act mandates that federal authorities must indict an incarcerated individual, or file an information, within 70 days of his arrest in connection with the offenses specified in the indictment, or from the date the defendant first appears before the court in which such charge is pending, whichever date is the latest. 18 U.S.C. § 3161(c)(1).

The Speedy Trial Act, however, excludes periods of delay arising from other proceedings involving the defendant, including delay resulting from "any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). It further excludes any delay arising from the district court's grant of a continuance on the ground that the ends of justice are served, provided that the district court articulates its specific findings. *Id.* § 3161(h)(7)(A). Further, the Act provides a non-exclusive list of factors which a judge should consider in determining whether to grant such a continuance. *Id.* § 3161(h)(7)(B). One factor is whether "in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified . . . ." *Id.* § 3161(h)(7)(B)(iii).

We will consider whether a defendant's right to a speedy trial has been violated as a mixed question of law and fact, reviewing questions of law *de novo* and questions of fact under the clearly erroneous standard. *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996). Issues not raised in a party's initial brief on appeal are considered abandoned. *United States v. Campbell*, 26 F.4th 860, 865 (11th Cir. 2022) (*en banc*), *cert. denied*, 143 S. Ct. 95 (2022).

The record shows that, even if properly preserved, McRae's speedy trial argument nevertheless fails because there was no violation of his speedy trial rights between September 2019 and May 2021. All the relevant time was excluded by the need to: (i) address

pending motions, including McRae's motion to suppress; (ii) continue the proceedings, due to the ongoing COVID-19 health emergency; (docs. 49, 53, 54, 55, 60, 67); (iii) address McRae's efforts to obtain replacement counsel or proceed *pro se*; and (iv) respond to McRae's motion to dismiss the indictment due to Double Jeopardy and speedy trial concerns. 18 U.S.C. § 3161 3161(h)(7)(A); (h)(1)(D). Further, as the district court explicitly noted, those continuances were properly granted in the interest of justice. Thus, we affirm the district court's order dismissing McRae's pretrial motions to dismiss based on alleged Double Jeopardy and speedy trial challenges.

## II.

McRae contends that the district court erred by denying his motion to suppress as to the firearm and his statements related thereto, based on the public safety exception, the inevitable discovery doctrine, and implied consent from the homeowner, Labrisha Keller. The Supreme Court has established a narrow exception to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), where there is a threat to public safety or to law enforcement officers. *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) (citing *New York v. Quarles*, 467 U.S. 649, 656, 658, 104 S. Ct. 2626, 2632 (1984)). "The public safety exception allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public." *Id.*

The inevitable discovery doctrine allows the government to introduce evidence obtained from an illegal search or other violation if there is a "reasonable probability that the evidence in

6                    Opinion of the Court                    21-13905

question would have been discovered by lawful means." *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015) (internal quotation marks omitted). The government must demonstrate that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id.* (internal quotation marks omitted). In other words, the government must show "that the police would have discovered the evidence by virtue of ordinary investigations of evidence or leads already in their possession." *Id.* (internal quotation marks omitted).

"An overnight guest has a reasonable expectation of privacy in a residence sufficient to establish standing." *United States v. Maxi*, 886 F.3d 1318, 1326 (11th Cir. 2018). The warrant requirement does not apply where the homeowner voluntarily consented to the search. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990). Consent may be nonverbal, but this consent may not be voluntary if the officers exhibited a sufficient show of force or authority that coerced the occupant to agree to the search. *United States v. Ramirez-Chilel*, 289 F.3d 744, 751-52 (11th Cir. 2002).

"We review a district court's denial of a motion to suppress evidence for clear error as to factual findings and *de novo* as to its application of the law." *United States v. Watkins*, 760 F.3d 1271, 1282 (11th Cir. 2014) (emphasis added). We consider the evidence in the light most favorable to the district court's judgment. *Id.* In reviewing the denial of a motion to suppress, we may review the entire record, including trial testimony. *Newsome*, 475 F.3d at 1224. Similarly, "[w]hether a person was in custody and entitled to *Miranda*

warnings is a mixed question of law and fact; we review the district court's factual findings on the matter for clear error and its legal conclusions *de novo*." *United States v. McDowell*, 250 F.3d 1354, 1361 (11th Cir. 2001).

The record demonstrates that the officers' questions regarding the gun did not violate *Miranda* because the questions fit into the public safety exception. *Newsome*, 475 F.3d at 1224. The magistrate judge conducted a hearing on the motion to suppress and found that the officer clearly expressed concern about Keller's children having access to the gun because he reasoned that if McRae had a gun clip in his pocket, which he admitted he did, the gun was nearby. In addition, the magistrate judge properly found that the magazine should not be suppressed because the officers would have inevitably discovered it. *Johnson*, 777 F.3d at 1274. Furthermore, even if McRae had a reasonable expectation of privacy as an overnight guest in Keller's home, *see Maxi¸* 886 F.3d at 1326, the record supports the magistrate judge's finding that Keller impliedly consented to the search, so there was no Fourth Amendment violation. *Rodriguez*, 497 U.S. at 181, 110 S. Ct. at 2797. Having obtained consent, we conclude the officers thus did not violate the Fourth Amendment, and we affirm the denial of the motion to suppress.

**III**.

McRae argues that the district court erred in finding that his waiver of his right to counsel was valid. A district court's determination on the validity of a defendant's waiver of his Sixth

8                    Opinion of the Court                    21-13905

Amendment right to counsel is generally a mixed question of law and fact that we review *de novo*. *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002).

Under the Sixth Amendment, all criminal defendants are entitled to the assistance of counsel. U.S. CONST. AMEND. VI. It does not, however, guarantee defendants the unqualified right to counsel of their choice, and an indigent criminal defendant does not have a right to a particular lawyer or to demand a different appointed lawyer except for good cause. *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008). "Good cause . . . means a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* (internal quotation marks omitted). Defendants who lack the means to hire a private attorney must either accept the appointed counsel or represent themselves. *Garey*, 540 F.3d at 1263-1264.

The right to self-representation is closely tied to the right to representation by counsel. *See id.* at 1262-63. In *Faretta v. California*, the Supreme Court concluded that the Sixth Amendment provides a right to the accused to make a defense himself. 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975). For a waiver of the Sixth Amendment to be valid, the defendant must clearly and unequivocally assert his right of self-representation. *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986). To make a valid waiver, the district court should make the defendant aware of the dangers and disadvantages

of self-representations so the record will establish that he knows what he is doing, and his choice is made with that understanding.

A proper *Faretta* hearing ensures that the defendant is aware of the nature of the charges against him, possible punishments, basic trial procedure, and the hazards of self-representation.  *See Kimball*, 291 F.3d at 730.  We have repeatedly determined that "a defendant must have an awareness of the penal consequences of conviction before his decision to represent himself can constitute a knowing waiver of his Sixth Amendment right to counsel."  *See, e.g.*, *United States v. Hakim*, 30 F.4th 1310, 1323 (11th Cir. 2022), *cert. denied*, ___ U.S. ___, 143 S. Ct. 776 (2023); *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995); *Kimball*, 291 F.3d at 732.  In *Hakim*, the district court allowed the defendant to represent himself during post-trial proceedings, finding that the defendant had knowingly waived his right to counsel after the court misinformed him of the maximum possible sentence he faced.  30 F.4th at 1314-15.

On appeal, we vacated and remanded the case, noting that the magistrate judge "not only failed to inform Hakim of the maximum sentence, but he misled Hakim by incorrectly representing that the maximum term of imprisonment would be one year, when it was instead three years."  *Id.* at 1325, 1327.  However, we also explained that providing "materially incorrect information about the defendant's sentence does not render his waiver unknowing if the defendant understood correct countervailing information from another source."  *Id.* at 1324-25.  We clarified that "[t]he ultimate test is not the trial court's express advice, but rather the defendant's

understanding," and that giving correct advice to a defendant about possible punishments is "the ideal method" of ensuring that he has that understanding. *Id.*; *Cash*, 47 F.3d at 1088; *Garey*, 540 F.3d at 1266 (internal quotation marks omitted).

The record demonstrates that there was no Sixth Amendment violation. The magistrate judge properly considered many elements of the *Faretta* hearing, confirming that McRae had not studied law or represented himself before and that he was unfamiliar with the rules of the court. The magistrate judge advised McRae of the advantages of counsel, the disadvantages of representing himself, and stated that court-appointed counsel was a well-trained attorney. The magistrate judge confirmed that McRae wanted to proceed *pro se* and appointed standby counsel. Although the magistrate judge misinformed McRae of the maximum potential sentence he faced, McRae had countervailing information about his potential maximum sentence from another source. At McRae's initial appearance, the government informed him that he could face a penalty of 15 years to life if convicted. Thus, McRae had knowledge of the penal consequences to his conviction and made a knowing waiver of his right to counsel. *See Hakim*, 30 F.4th at 1324-25. Accordingly, we conclude that the district court committed no reversible error.

## IV.

McRae challenges his ACCA sentence enhancement on appeal for the first time. We generally review ACCA enhancement challenges *de novo*. *See, e.g.*, *United States v. Xavier Smith*, 983 F.3d

1213, 1222-23 (11th Cir. 2020) (whether a prior conviction is a "serious drug offense" under the ACCA). However, when a defendant does not state the grounds for an objection in the district court, we review for plain error. *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003). Under this review, the defendant must show that there was an error, that was plain, that affected his substantial rights, and that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014).

The ACCA requires that any person who violates 18 U.S.C. § 922(g) serve a mandatory minimum sentence of 15 years when the defendant has 3 prior convictions for violent felonies or serious drug offenses committed on occasions different from one another. 18 U.S.C. § 924(e)(1). The ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." *Id*. § 924(e)(2)(A)(ii). Federal law, however, governs the meaning of terms in the ACCA and state law governs the elements of state law crimes. *United States v. Jackson* ("*Jackson II*"), 55 F.4th 846, 850 (11th Cir. 2022), *cert. granted*, 143 S.Ct. 2457 (U.S. May 15, 2023) (No. 22-6640).

First, McRae contends that because his 2017 drug convictions involved ioflupane, they are ineligible for the ACCA enhancement because this specific drug was not listed under the federal drug schedule. Section 102 of the Controlled Substances Act

defines a "controlled substance" as any substance on the federal controlled substances schedules. *See* 21 U.S.C. §§ 802(6), 812. The current version of the federal drug schedules expressly excludes ioflupane. 21 C.F.R. § 1308.12(b)(4)(ii). However, the federal drug schedules included ioflupane until 2015. *Jackson II*, 55 F.4th at 851 & n.4.

Georgia law prohibits possession with intent to distribute any controlled substance. Ga. Code Ann. § 16-13-30(b). In its current controlled substances schedules, Georgia includes, in part:

> Cocaine, coca leaves, any salt, compound, derivative, stereoisomers of cocaine, or preparation of coca leaves, and any salt, compound, derivative, stereoisomers of cocaine, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.

Ga. Code Ann. § 16-13-26(1)(D). It does not specifically include or exclude ioflupane. *Id.* The versions of the definition of cocaine in effect in 2007 and 2018 contained the same wording. *See id.* (amendments effective from May 29, 2007, to May 5, 2008; and May 8, 2017, to May 2, 2018).

We apply the categorical approach to determine whether a defendant's state conviction is a serious drug offense under the ACCA. *Jackson II*, 55 F.4th at 850. Under the categorical approach,

we consider the statutory definition of the state offense rather than the facts of the crime itself. *Id.* A state conviction qualifies only if the state statute under which the conviction occurred defines the offense in the same way as, or more narrowly than, the ACCA's definition of a serious drug offense. *Id.*

McRae relies on our decision in *Jackson I*, to argue that his two 2017 cocaine offenses do not qualify under the ACCA. In *United States v. Jackson* ("*Jackson I*"), 36 F.4th 1294, 1306 (11th Cir. 2022) (vacated), we determined that the federal controlled substances schedules that defined a serious drug offense under the ACCA were those in effect when the defendant committed his federal offense and that those schedules did not cover ioflupane at the time he committed his federal offense. *Id.* at 1299-1302. Since the relevant Florida statute covered ioflupane when he was convicted of his prior cocaine-related offenses, the Florida statute's controlled-substance element was broader than the relevant version of the federal controlled substances schedules, and his prior cocaine-related convictions thus did not qualify as serious drug offenses. *Id.* at 1303-04.

After vacating this decision, we held in *Jackson II*, that the appellant's Florida cocaine-related convictions qualified as serious drug offenses. *Jackson II*, 55 F.4th at 861-62. We determined that the ACCA's definition of a serious drug offense incorporates the version of the federal controlled substances schedules in effect when the defendant was convicted of the prior state drug offense. *Id.* at 854. We concluded that the appellant's 1998 and 2004 Florida

cocaine-related convictions qualified because Florida's controlled substances schedules included ioflupane until 2017 and the federal controlled substance schedules also included ioflupane until 2015. *Id.* at 851 & n. 3-4.  We determined that the Florida controlled substances schedules included ioflupane because Florida later amended its schedules to exclude ioflupane.  *Id.* at 851 n.3.

Although the district court incorrectly found that McRae's two 2017 cocaine distribution convictions qualified under the ACCA, McRae cannot demonstrate plain error.  McRae fails to cite any precedent directly holding that in 2017, Georgia law included ioflupane as a controlled substance.  In light of this, McRae cannot establish error.  *See Aguila-Iberra*, 740 F.3d at 592.

Second, relying on *Wooden v. United* States, ___ U.S. ___, 142 S. Ct. 1063 (2022), McRae asserts that the district court erred in finding that his two 2017 cocaine distribution offenses occurred on different occasions.  The ACCA mandates a minimum term of imprisonment of 15 years for "a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another.*"  18 U.S.C. § 924(e) (emphasis added).  In *Wooden*, the Supreme Court noted that several factors may be relevant to that determination: the amount of time between offenses, the proximity of the locations where the offenses occurred, and whether the offenses are part of the same scheme or achieve the same objective. *Wooden*, 142 S. Ct. at 1070-71.  But "[i]n many cases, a single factor—especially of time or place—can decisively differentiate

occasions." *Id.* at 1071. "Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events." *Id.*

In *Penn*, we "determine[d] whether two offenses occurred on the same occasion based on the ordinary meaning of the word." *United States v. Penn*, 63 F.4th 1305, 1318 (11th Cir. 2023). We applied *Wooden* and concluded that "the answer [wa]s obvious:" the defendant's offenses "did not occur on the same occasion." *Id.* We held that the district court lawfully sentenced the defendant under the ACCA. *Id.* at 1318-19. We also addressed whether the Fifth and Sixth Amendments require a jury to find, or the defendant to admit, that the offenses occurred on different occasions. *Id.* at 1318. We reviewed the challenge for plain error because the defendant raised it for the first time on appeal. *Id.* We held that the defendant did not "establish plain error" because there was no precedent from the Supreme Court or us holding that a sentencing court cannot perform the different occasions analysis. *Id.*

Under our prior panel precedent rule, we must follow a prior binding precedent "unless and until it is overruled by this [C]ourt *en banc* or by the Supreme Court." *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003) (emphasis added). A subsequent panel cannot overrule a prior panel even if it is convinced the prior panel was wrong. *United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (*en banc*).

The record convinces us that the district court did not err, let alone plainly err, in determining that McRae had committed his cocaine offenses on different occasions. His convictions occurred on two separate occasions and the state charged him in two different indictments. In addition, McRae's arguments related to the district court's application of the ACCA enhancement are unpersuasive. As was the case in *Penn*, there is no precedent from the Supreme Court or us holding that a sentencing court cannot perform the different occasions analysis. *Penn*, 63 F.4th at 1318. Thus, we find no error in the district court's application of the ACCA in McRae's case.

Accordingly, based on the aforementioned reasons, we affirm McRae's convictions and total sentence.

**AFFIRMED.**