[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 21-13903

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SERGIO ANTONIO HOOD,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00383-CEH-AEP-1

_____

Before LUCK, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

This case returns to us on remand from the Supreme Court. Sergio Hood appeals his convictions and total 262-month sentence for possession of ammunition by a felon, obstruction of justice, and tampering with a witness. He argues that the district court's determinations related to his prior convictions were error and, ultimately, that his conviction and sentence are unconstitutional. In our previous panel opinion, we affirmed Hood's convictions and sentence. *United States v. Hood*, No. 21-13903, 2024 WL 714131, at *1 (11th Cir. Feb. 21, 2024). Hood petitioned for a writ of certiorari, which the Supreme Court granted in light of its intervening decision in *Erlinger v. United States*, 602 U.S. 821 (2024). *See Hood v. United States*, No. 23-7504, 2024 WL 4426468, at *1 (U.S. Oct. 7, 2024). We now reconsider Hood's appeal with the benefit of the Supreme Court's guidance in *Erlinger*. After careful review, we affirm Hood's conviction, vacate his sentence under *Erlinger*, and remand for resentencing.

## I.      FACTUAL & PROCEDURAL BACKGROUND[1]

A federal grand jury returned a three-count indictment against Hood, charging him with: possession of ammunition by a

---

[1] We present the facts and procedural history as we recounted them in our previous panel opinion.

felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One); obstruction of justice, in violation of 18 U.S.C. §§ 1503 and 2 (Count Two); and tampering with a witness, in violation of 18 U.S.C. §§ 1512(b)(2) and 2 (Count Three). As support for Count One, the indictment listed Hood's prior federal convictions for possession of firearms as a felon and distribution of controlled substances, as well as his prior Florida state conviction for lewd or lascivious battery.

Prior to trial, the government filed a motion *in limine* to admit evidence related to Hood's prior federal gun convictions to support the felon in possession charge. Specifically, the government sought to admit, *among other things*, certified records of Hood's prior conviction for two counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g), to prove his felon status, and a copy of the same records, signed by Hood, to prove that he knew of his status. The government argued that, even if Hood stipulated to his prohibited-person status, the evidence was still admissible under Federal Rule of Evidence 404(b). It noted that, while the Supreme Court held in *Old Chief v. United States*, 519 U.S. 172 (1997) that a defendant must be permitted to stipulate to the prior offense without identifying the nature of the underlying offense when the sole purpose of the evidence is to prove the element of prior conviction, Rule 404(b) guarantees the opportunity to seek admission of prior conviction evidence with multiple utility. The government asserted that the prior conviction evidence was admissible because it was relevant to an issue other than Hood's character, the records could prove that he committed the acts, and the

significant probative value was not outweighed by undue prejudice.

Hood opposed the admission of this evidence. He argued that the probative value of the evidence was substantially outweighed by its unfair prejudice and that the admission would have a substantial and injurious effect on the jury verdict, such that this evidence needed to be excluded under Federal Rule of Evidence 403.

The district court held a hearing on the motion. The court determined that the evidence was admissible for the purpose argued by the government and that *Rehaif v. United States*, 588 U.S. 225 (2019) "add[ed] the distinct requirement . . . of establishing [Hood's] knowledge." Noting that this Circuit had affirmed the admission of prior gun-related convictions to prove the knowledge element, the district court determined that the evidence was admissible at trial with specific redactions and a limiting jury instruction.

Hood proceeded to trial. During jury selection, the court determined that the nature of Hood's prior felony conviction for lewd and lascivious battery was inadmissible but followed its pretrial ruling regarding his prior gun-related convictions. The court read Count One to the prospective jurors, stating that Hood, "knowing that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year including possession of firearms as a convicted felon and distribution of controlled substances . . . did knowingly possess . . .

ammunition." During *voir dire,* the government asked jurors if they could follow the court's limiting instructions as to the prior convictions evidence and consider the evidence only for its proper purpose. One prospective juror stated that it might affect their judgment but agreed that they would probably be able to overcome the prejudice during deliberations. Multiple other prospective jurors stated that the knowledge that Hood was previously convicted of a crime involving firearms would make them more likely to believe that he would commit another firearm crime.

The government stated its intention to introduce Hood's prior firearm possession and drug distribution convictions as impeachment evidence against Hood, should he testify. Hood then testified on his own behalf. Factually, he denied possessing a gun and stated that he was at his brother's house watching sports when the alleged shooting occurred. However, cell phone records showed that Hood left his brother's home before the shooting occurred. As to his felon status, Hood testified that he had been convicted of two gun charges and three drug charges. He stated, "I have nothing illegal, no guns, no drugs, no nothing. I'm already on probation for that so I know I'm prohibited of having those things." Testimony from Hood's U.S. Probation Officer and certified records of Hood's convictions admitted into evidence confirmed that, at the time of the shooting, Hood was on supervised release for two counts of possession of a firearm by a felon.

Tampa Police Department Detective Daniel Romonosky testified that, following the incident, Hood was arrested and held

in state custody for about a year, until he was transferred to federal custody for his supervised release revocation hearing.  He testified that, while in custody, Hood called his brother multiple times, using different inmates' pin numbers, to discuss his alibi that they had been together at the time of the shooting.  Before jury deliberations, the district court instructed the jury:

> During the trial, you heard evidence of acts allegedly done by the Defendant on other occasions that may be similar to acts with which the Defendant is currently charged.  You must not consider any of this evidence to decide whether the Defendant engaged in the activity alleged in the indictment.  This evidence is admitted and may be considered by you in determining whether the Defendant had the state of mind or intent necessary to commit the crime charged in the indictment and whether the Defendant had a motive or the opportunity to commit the acts charged in the indictment.

At the end of the six-day trial, the jury found Hood guilty on all three counts.  The U.S. Probation Office generated Hood's presentence investigation report ("PSI").  The PSI grouped Counts Two and Three in accordance with U.S.S.G. § 3D1.2(a), then grouped Counts Two and Three with Count One in accordance with § 3D1.2(c).  The PSI calculated an offense level of 20 in accordance with U.S.S.G. § 2K2.1(a)(4)(A), based on the determination that Hood was previously convicted of three counts of distribution of methylenedioxymethamphetamine ("MDMA"), a controlled substance offense.    Probation    then    applied:  (1)  a  four-level

enhancement, under § 2K2.1(b)(6)(B), because Hood possessed ammunition in connection with another felony offense[2]; and (2) a two-level adjustment, under U.S.S.G. § 3C1.1, for obstruction of justice. The resulting adjusted offense level was 26.

Additionally, the PSI determined that Hood qualified as an armed career criminal under U.S.S.G. § 4B1.4 because he had at least three prior convictions for a violent felony or serious drug offense, committed on occasions different from one another. This classification was based on Hood's convictions for: (1) distribution of MDMA on March 1, 2011, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) distribution of MDMA on March 2, 2011, in violation of § 841(a)(1) and (b)(1)(C); and (3) distribution of MDMA on June 21, 2011, in violation of §§ 841(a)(1), (b)(1)(C) and 2. The PSI determined that the application of the armed career criminal enhancement resulted in a total offense level of 34 because Hood possessed ammunition in connection with aggravated assault with a deadly weapon, a crime of violence.

The PSI then detailed Hood's criminal history. It listed Hood's prior convictions, which included petit theft, lewd and lascivious battery, distribution of MDMA, possession of a firearm by

---

[2] Hood was charged in Hillsborough County Circuit Court with aggravated assault with a deadly weapon (Count 1) and shooting at or within a vehicle (Count 2) for the offense conduct in this case. But Count 1 was dismissed, and Count 2 was pleaded down to a lesser included offense of trespass in an occupied structure. References throughout the PSI to the offense conduct being in connection with "another felony offense" or "crime of violence" refer to these charges.

a felon, and trespass. Based on his convictions, the PSI calculated an initial criminal history score of six but added two points, *see* U.S.S.G. § 4A1.1(d), because Hood committed the instant offense while on supervised release. A total criminal history score of eight yielded a criminal history category of IV. However, the PSI assigned a criminal history category of VI under § 4B1.4(c)(2) because of Hood's armed career criminal status and because he possessed the ammunition in connection with a crime of violence. Hood's total offense level of 34 and a criminal history category VI yielded a guideline range of 262 to 327 months' imprisonment.

In his objections to the PSI, Hood objected, in relevant part, to the application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Specifically, he argued that the imposition violated the Fifth and Sixth Amendments because the requirements were not charged in the indictment nor proven to a jury beyond a reasonable doubt. He also objected to the PSI's reliance on non-*Shepard*[3] approved documents. Hood also objected to the classification of his prior convictions under 18 U.S.C. § 2 as ACCA predicate "serious drug offense[s]" because § 2 offenses are not included in the statutory definition. He objected to the classification of his predicate conviction, which consisted of three separate counts, as being three predicate offenses "committed on occasions different from

---

[3] *Shepard v. United States*, 544 U.S. 13, 26 (2005) (referring to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information").

one another," arguing that the determination erroneously relied on non-elemental facts. Finally, he challenged the ACCA's "occasions clause" as void for vagueness.

The government filed a sentencing memorandum in response to Hood's objections and in support of its sentencing recommendation. In relevant part, the government contended that the ACCA need not be set forth in the indictment nor proved beyond a reasonable doubt because it is a sentencing enhancement provision, not a distinct offense. Next, it argued that Hood's prior convictions were supported by the *Shepard*-permissible indictment, plea colloquy, and undisputed facts from the PSI from his prior federal case. Third, the government argued that Hood's § 2 argument was a misunderstanding of his prior convictions, as § 2 does not define a crime and Hood was principally liable for all three counts. Fourth, responding to Hood's "occasions clause" argument, the government contended that Hood's prior convictions were all temporally distinct, i.e., successive rather than simultaneous, and thus committed on different occasions. Finally, the government argued that the application of the ACCA in Hood's case did not violate the Fifth or Sixth Amendments. To support its contentions, the government submitted alongside its memorandum: (1) the certified judgment; (2) the transcript of the guilty plea hearing; (3) the transcript of the sentencing hearing; and (4) the indictment from Hood's prior convictions for three counts of distribution of MDMA.

Hood then filed a sentencing memorandum, in which he briefly reasserted his arguments that he should not be classified as an armed career criminal, and that his sentence should be limited accordingly.

The district court addressed Hood's objections at sentencing. The district court overruled Hood's objection arguing that the government needed to allege the ACCA violations in the indictment, finding that this Court's precedent did not require such. The court then determined that Hood's prior convictions were supported by *Shepard*-approved documents, and relying on these documents, determined that Hood's prior convictions were three separate, temporally distinct offenses that qualified Hood as an armed career criminal under the ACCA. The court next overruled Hood's § 2 objection to the ACCA, determining that, although Hood pleaded guilty to aiding and abetting in addition to his drug distribution charges, this did not disqualify the convictions as ACCA predicates. The court then overruled Hood's Fifth and Sixth Amendment objections because this Court's caselaw foreclosed the arguments.

The district court imposed a total sentence of 262 months' imprisonment, consisting of 262 months on Count 1, 120 months on Count 2, and 240 months on Count 3, to run concurrently, and a five-year term of supervised release. This appeal ensued.

## II.    DISCUSSION

On appeal, Hood argues that: (1) the district court erred in admitting evidence of his prior felon-in-possession convictions at

trial; (2) 18 U.S.C. § 922(g)(1) violates the Commerce Clause, both facially and as applied; (3) his sentence should be vacated and remanded in light of the Supreme Court's decision in *Wooden v. United States*, 595 U.S. 360 (2022), and because the ACCA sentencing enhancement violates the Fifth and Sixth Amendments since the "occasions different" requirement was neither charged in the indictment, nor found by the jury; and (4) the district court erred in determining that Hood's convictions under 18 U.S.C. § 2 qualified as "serious drug offenses" because it is not among the statutes listed in the ACCA's definition. We address these arguments in turn.

## A.　　The Admission of Hood's Prior Convictions

We review the admission of evidence under Federal Rule of Evidence 404(b) for abuse of discretion. *United States v. Culver*, 598 F.3d 740, 747 (11th Cir. 2010). "If a reviewing court finds that a district court has abused its discretion in admitting evidence in violation of Rule 404(b), then its decision to uphold the conviction is properly reviewed under a harmless error standard." *United States v. Hubert*, 138 F.3d 912, 914 (11th Cir. 1998). Under that standard, "[r]eversal is warranted 'only if [the error] resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010) (second alteration in original) (quoting *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999)). "Overwhelming evidence of guilt is one factor that may be considered in finding harmless error." *Id.* (quoting *Guzman*, 167 F.3d at 1353).

Rule 404(b) prohibits the introduction of evidence of "a crime, wrong, or other act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It does, however, allow such evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is a rule of inclusion, and accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case." *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (alteration adopted) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003), *abrogated in part on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019)).

We recognize a three-part test to determine whether evidence is admissible under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the act; and (3) the probative value of the evidence must not be substantially outweighed by undue prejudice, as established in Federal Rule of Evidence 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

The first prong of the Rule 404(b) test can be satisfied "where the state of mind required for the charged and extrinsic offenses is the same." *Id.* at 1345. "[B]y pleading not guilty, [a defendant] place[s] th[e] [knowledge] element of the § 922(g) offense in issue."

*Jernigan*, 341 F.3d at 1281 n.7.  This Court has held that a prior conviction in which the defendant possessed a gun provides a "logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental)." *Id.* at 1281 (stating that a defendant's prior offenses involving the knowing possession of a firearm "plainly bore" on the defendant's knowledge that the gun was present in the charged instance).

The third prong of the Rule 404(b) test consists of balancing, under Rule 403, the probative value of the evidence against its prejudicial effect and requires the court to conduct the Rule 403 inquiry based "upon the circumstances of the extrinsic offense." *Edouard*, 485 F.3d at 1345 (quoting *United States v. Dorsey*, 819 F.2d 1055, 1059 (11th Cir. 1987)).  Rule 403 is an extraordinary remedy that courts should employ "only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)).  Accordingly, we view the disputed evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)).

The risk of undue prejudice can be reduced by an appropriate limiting instruction.  *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005); *see, e.g.*, *United States v. Diaz-Lizaraza*, 981

F.2d 1216, 1225 (11th Cir. 1993) (noting that, where the district court issued a limiting instruction both at the presentation of the evidence and in its final charge to the jury, "any unfair prejudice possibly caused by its introduction was mitigated"). Indeed, a district court's reticence and careful efforts "to preclude the admission of certain especially prejudicial aspects of" a prior conviction through limiting instructions are significant. *See Jernigan*, 341 F.3d at 1282.

Section 922(g) governs offenses for unlawful possession of a firearm and ammunition and "entails three distinct elements: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce." *Id.* at 1279; § 922(g)(1). The Supreme Court has held that, in a prosecution under §§ 922(g) and 924(a)(2), the government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 588 U.S. at 237.

In the § 922(g) context, the Supreme Court has held that "evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Old Chief*, 519 U.S. at 174–77, 185, 191. However, when proffered evidence "has the dual nature of legitimate evidence of an element and illegitimate evidence of character," the court must determine "whether the danger of undue prejudice outweighs the probative value of the

evidence in view of the availability of other means of proof." *Id*. at 184.

Hood argues that the district court committed fundamental and harmful error when, at trial, it granted the government's motion to admit evidence of his prior convictions under a Rule 404(b) exception to show that Hood had "knowledge" of his prohibited person status. He argues that the district court incorrectly determined that *Rehaif* established a requirement for the court to allow evidence that the defendant knew of his prohibited person status or that he was prohibited from possessing the firearms, even when the defendant stipulated to that issue. Hood contends that, because he did not dispute knowledge of his status, the element was not at issue in his case, and thus his prior crimes were unnecessary and only showed propensity. He also asserts that the court failed to follow *Old Chief* and should have allowed him to stipulate to his prohibited status in exchange for prohibiting the admission of the evidence. He contends that the district court's limiting instruction to the jury could not cure undue prejudice. And he asserts that any probative value of the evidence was substantially outweighed by unfair prejudice.

Here, the district court did not abuse its discretion in allowing Hood's prior convictions into evidence because they were relevant to show his knowledge about Count One. By pleading not guilty to the charges, Hood made knowledge of possession of ammunition an issue in the case, regardless of his alibi defense and testimony that he was not present at the shooting. *See Jernigan*, 341

F.3d at 1281 & n.7. As for Hood's reliance on *Old Chief*, the Supreme Court held that the district court abused its discretion by admitting a prior conviction record for the sole purpose of establishing that the defendant was a convicted felon in order to satisfy the prior conviction element of § 922(g)(1), despite the defendant's stipulation as to the conviction. *See* 519 U.S. at 174. Here, however, Hood's prior convictions were admitted for a separate evidentiary purpose, and *Old Chief* thus does not preclude their admission. *Id.* Similarly, because the government's burden to prove that Hood knew that he belonged to a category of persons prohibited from possessing a firearm is separate from its burden to prove that he knowingly possessed a firearm, his stipulation to the former does not bar the government's introduction of evidence intended to satisfy the latter requirement. *See Rehaif*, 588 U.S. at 237; *Jernigan*, 341 F.3d at 1279.

The prior convictions' probative value was also not "substantially outweighed" by their prejudicial effect. Any risk of unfair prejudice to Hood was minimal due to the district court's careful efforts to redact the conviction records, and any undue prejudice that resulted from the district court's allowance of the prior convictions was mitigated by the three limiting instructions that it gave to the jury. Accordingly, we affirm as to this issue.

## B.    The Constitutionality of 18 U.S.C. § 922(g)(1)

For the first time on appeal, Hood argues that his conviction must be vacated because § 922(g)(1) is unconstitutional, both facially and as applied, for exceeding congressional authority under

the Commerce Clause.  He contends that Congress is not permitted to criminalize the intrastate possession of ammunition simply because the ammunition crossed state lines at some time.  Hood, however, acknowledges that his arguments here are foreclosed by this Court's precedent, although he criticizes that precedent as being based on a statutory interpretation decision that used a standard well below the contemporary substantial effects test in *United States v. Lopez*, 514 U.S. 549 (1995).

Generally, we review the constitutionality of a statute *de novo*, as it is a question of law.  *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).  But if the issue is raised for the first time on appeal, we review for plain error only.  *Id.*  Plain error occurs only if (1) there was error, (2) it was plain, (3) it affected the defendant's substantial rights, and (4) it seriously affected the "fairness, integrity, or public reputation of judicial proceedings."  *Id.* (quoting *United States v. Jones*, 289 F.3d 1260, 1265 (11th Cir. 2002)).  Additionally, the prior-precedent rule requires us to follow a prior binding precedent unless it is overruled by this Court *en banc* or by the Supreme Court.  *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).  "To constitute an 'overruling' for the purposes of this prior panel precedent rule, the Supreme Court decision must be 'clearly on point.'"  *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)).

"We have clearly held that § 922(g) is constitutional under the Commerce Clause."  *United States v. Longoria*, 874 F.3d 1278,

1283 (11th Cir. 2017).  We have also rejected as-applied challenges to § 922(g), holding that the government proves a "minimal nexus" to interstate commerce where it demonstrates that the firearms were manufactured outside of the state where the offense took place and, thus, necessarily traveled in interstate commerce.  *See Wright*, 607 F.3d at 715–16.  And we have specifically rejected constitutional challenges to § 922(g) under *Lopez*, concluding that "[n]othing in *Lopez* suggest[ed] that the 'minimal nexus' test should be changed."  *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996).

Here, because Hood did not object on these grounds below, we review only for plain error.  The district court did not plainly err in convicting Hood under § 922(g) because we have upheld the constitutionality of § 922(g) against both facial and as applied challenges under the Commerce Clause, as Hood argues here.  Thus, Hood's challenge to the constitutionality of § 922(g) is foreclosed by the prior-precedent rule, and we affirm as to this issue.

## C.　The Constitutionality of Hood's Sentence

We review constitutional challenges to a sentence *de novo*. *Longoria*, 874 F.3d at 1281.

As an initial matter, we reject Hood's argument that the ACCA's occasions clause is void for vagueness under the Due Process Clause of the Fifth Amendment.  "To overcome a vagueness challenge, statutes must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' and 'must provide explicit standards for those

who apply them.'" *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). The plain language of the ACCA's occasions clause gives persons of ordinary intelligence fair notice that committing qualifying offenses on different occasions will result in the sentencing enhancement, and it permits non-arbitrary enforcement. Therefore, the occasions clause is not unconstitutionally vague.

Turning to the *Erlinger* issue, under the Fifth and Sixth Amendments, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

The ACCA states:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1). This provision "kicks in only if (1) a § 922(g) offender has previously been convicted of three [predicate felony offenses], and (2) those three felonies were committed on 'occasions different from one another.'" *Wooden*, 595 U.S. at 368 (quoting § 924(e)).

The Supreme Court addressed the correct approach for determining whether a state conviction qualifies as a predicate ACCA violent felony in *Descamps v. United States*, 570 U.S. 254, 270 (2013) and *Mathis v. United States*, 579 U.S. 500 (2016). The Court emphasized the "elements-only" categorical approach in making such a determination, noting that the consideration of non-elemental facts would require impermissible judicial fact-finding. *Mathis*, 579 U.S. at 510–12. And the Court specifically stated that an elements-centric approach was necessary to avoid Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries—i.e., whether the elements of the predicate convictions were proven beyond a reasonable doubt. *See Descamps*, 570 U.S. at 267.

However, *Descamps* and *Mathis* focused solely on the predicate felony stage of the ACCA inquiry. *United States v. Dudley*, 5 F.4th 1249, 1260 (11th Cir. 2021). "Unlike the predicate felony determination, which focuses solely on the statutory legal elements, the different-occasions inquiry necessarily 'requires looking at the facts underlying the prior convictions.'" *Id.* (quoting *United States v. Richardson*, 230 F.3d 1297, 1299 (11th Cir. 2000)). In *Erlinger*, the Court considered for the first time "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." 602 U.S. at 825. And, the Court concluded, the latter is correct: "[T]he government must prove beyond a reasonable doubt to a unanimous jury the

facts necessary to sustain the punishment it seeks," *id*. at 824, including "whether the defendant's prior offenses occurred on different occasions for purposes of applying ACCA's mandatory minimum sentence," *id*. at 847–48.

In this case, it was the district court and not the jury that decided whether Hood had committed three ACCA predicate offenses on different occasions.    The district court, therefore, erred under *Erlinger*.

In *United States v. Rivers*, this Court held that *Erlinger* error is not structural and is instead reviewed for harmlessness only.   134 F.4th 1292, 1305 (11th Cir. 2025).  As this Court explained, "*Erlinger* error is not structural because it does not render the defendant's trial 'fundamentally unfair or an unreliable vehicle for determining guilt or innocence,'" nor is it "the sort of error that destabilizes the defendant's entire trial on a fundamental level, as violations of basic rights to counsel, an impartial trial judge, or a public trial would." *Id*. at 1305–06 (quoting *Neder v. United States*, 527 U.S. 1, 9 (1999)). Still, harmless-error review "is not a dead end" for an appellant in a criminal case.  *United States v. Margarita Garcia*, 906 F.3d 1255, 1266 (11th Cir. 2018).  On harmless-error review, the government still bears the burden of demonstrating beyond a reasonable doubt that the jury verdict would have been the same absent the error. *Neder*, 527 U.S. at 18.

In *Rivers*, this Court determined that an *Erlinger* error had occurred because the district court, and not a jury, found that Rivers's prior drug offenses were committed on different occasions.

134 F.4th at 1305.  This Court further held that, although *Erlinger* error is not structural, the error that occurred in the case was nonetheless harmful, because the government did not meet its "burden of showing beyond a reasonable doubt that a rational jury would have found that the defendant's prior drug offenses all were 'committed on occasions different from one another.'"  *Id.* at 1306 (quoting § 924(e)).  Citing the Supreme Court's guidance in *Wooden* and *Erlinger*, this Court examined the "times, locations, purpose, and character of Rivers's prior crimes" and concluded that, "[o]n balance, given all these factors, a jury *might* reasonably conclude [that Rivers's drug] sales were part of a single criminal episode" orchestrated by one undercover officer.  *Id* at 1306–07 (internal quotations omitted).  This Court found significant that all of Rivers's prior drug offenses were committed "within a relatively short span of eight days" and in the same city.  *Id.* at 1307.  As to the latter two factors, "[a]ll of Rivers's sales were not only all to the [same undercover officer], but also . . . for small drug and small cash amounts ($50, $40, $100, $100)," making "the character and purpose of the purchases [ ] strikingly similar"—despite the fact that Rivers did not sell the same type of drugs on every occasion.  *Id.*  On this record, this Court was unable to determine that a jury would have found unanimously and beyond a reasonable doubt that Rivers's predicate offenses were committed on at least three separate occasions.

Here, as in *Rivers*, we conclude based on the record that the government has not met its burden of proving beyond a reasonable doubt that a rational jury would have found (also beyond a reasonable doubt) that the relevant ACCA predicates were committed on

21-13903                Opinion of the Court                23

three different occasions.  At sentencing, the United States introduced various pieces of evidence, including the indictment, the plea colloquy, and a copy of the judgment in Hood's prior felony case, which showed that Hood's three prior drug-related offenses occurred on March 1, 2011; March 2, 2011; and June 21, 2011—all in the same geographic area in Florida.  Regarding the events that occurred on back-to-back days in March 2011, Hood testified as follows:

> THE COURT: Now, this indicates, first, that back on March 1st, 2011, that you sold ten MDMA tablets to a person that turned out to be an undercover Hillsborough County Sheriff's detective.  Did you in fact sell those tablets to the undercover detective?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you know it was MDMA that you were selling?
>
> THE DEFENDANT: No.
>
> THE COURT: What did you think it was?
>
> THE DEFENDANT: I didn't know—I don't know what's in the pills.  I don't make them.
>
> THE COURT: Did you have some other name for it?
>
> THE DEFENDANT: Just they call Red Monkeys . . . .
>
> THE COURT: Okay.  But did you know that it was some illegal drug that you were selling?
>
> THE DEFENDANT: Oh, yeah, yeah.

THE COURT: Okay. But you didn't—how did they ask for them?

THE DEFENDANT: They say, do you have any pills, Red Monkeys? I said, I don't have them, but I can go get them for you. THE COURT: Okay. So on that occasion, they asked for in that—they asked for that type of pill and you said the pills—and you went and got them?

THE DEFENDANT: Yes.

THE COURT: And then you in turn sold them; is that correct?

THE DEFENDANT: Yes.

THE COURT: And then the same thing happened—and did the same thing happen, then, the next day where there was 40 pills that were sold?

THE DEFENDANT: Yes.

THE COURT: And you knew that there was some kind of illegal drugs; is that correct?

THE DEFENDANT: Yes.

THE COURT: Then later, on March 21st, you sold the same undercover detective two guns; is that true?

THE DEFENDANT: Yes.

The record thus shows that not only did Hood commit the two March 2011 drug offenses (both for relatively small drug and cash amounts) within a day of each other, but he committed them in the same area and with the same undercover detective—factors that the *Rivers* Court found significant in concluding that a jury

*might* have found that the defendant's drug sales were part of a single criminal episode. Additionally, both transactions involved the sale of MDMA, lending support for the conclusion that Hood's sales on March 1 and March 2 had the same purpose and character. On balance, a jury might reasonably conclude that these sales were part of a single criminal episode orchestrated by an undercover officer, which would lower the number of predicate offenses to below three.

Of course, it is still possible that, based on these facts, a jury could have found that Hood's March 2011 drug sales were not part of a single criminal episode, and that Hood in fact distributed controlled substances on three separate prior occasions. What matters, though, for purposes of harmless-error review, is the government's burden on this particular record. And, as in *Rivers*, we cannot say that the record shows beyond a reasonable doubt that a unanimous jury would have found beyond a reasonable doubt that Hood's predicate drug offenses were committed on three separate occasions. Therefore, because the government has not carried its burden under our harmless-error inquiry, we remand on this issue.

### D.    Hood's Prior Convictions Under 18 U.S.C. § 2

Finally, Hood contends that the district court erroneously determined that his prior convictions under 18 U.S.C. § 2 qualify as "serious drug offenses" to support the ACCA enhancement. We review *de novo* whether a prior conviction qualifies as a serious drug offense for ACCA purposes. *White*, 837 F.3d at 1228.

The ACCA defines a "serious drug offense" as, in relevant part, "an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law." § 924(e)(2)(A)(i).  Section 841(a)(1) makes it unlawful to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance, and § 841(b)(1)(C) creates a maximum penalty of twenty years' imprisonment for such an offense.

Hood argues that § 2—the federal aiding and abetting statute—is not among those specific portions of the U.S. Code enumerated in the ACCA's definition of "serious drug offense."  He asserts that canons of statutory interpretation indicate that Congress did not intend for § 2 offenses to be "serious drug offenses" under the ACCA definition.  Therefore, he argues, his prior convictions under § 2 cannot properly be "serious drug offenses," and he lacks the requisite number of predicate offenses to qualify for the ACCA enhancement and should be resentenced.

Under § 2, whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense, or "willfully causes" another to perform an act that would be an offense if performed by him, is punishable as a principal.  Aiding and abetting, under § 2, "is not a separate federal crime, 'but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense.'"  *United States*

*v. Sosa*, 777 F.3d 1279, 1292 (11th Cir. 2015) (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)).  In concluding that a Georgia conviction for aiding and abetting burglary qualified as a "violent felony" ACCA predicate offense, we have held that "an ostensible [ACCA] predicate crime is not deprived of that status merely because the conviction may have been based on conduct that aided and abetted the crime."  *United States v. Coats*, 8 F.4th 1228, 1245 (11th Cir. 2021).  We noted that, because every jurisdiction has expressly abrogated the distinction between principals and aiders and abettors, "[w]ere it otherwise, Congress would have enacted a sentencing enhancement statute for which no prior criminal conviction could ever serve as a predicate crime."  *Id.*

We thus conclude that the district court did not err in classifying Hood's § 2 convictions as "serious drug offense[s]" under the ACCA because, for ACCA predicate purposes, there is no distinction between a person charged as a principal and a person charged as an aider and abettor.  Therefore, we affirm as to this issue.

## III.   CONCLUSION

For the foregoing reasons, we affirm Hood's conviction, vacate his sentence, and remand for resentencing.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**